CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 21, 2014

LETTER TO COUNSEL:

RE: *James D. Hammond v. Commissioner, Social Security Administration;*
Civil No. SAG-13-1742

Dear Counsel:

On June 14, 2013, the Plaintiff, James D. Hammond, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 13, 15). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny the Plaintiff's motion and grant the Commissioner's motion. This letter explains my rationale.

The procedural history in this case is lengthy. Mr. Hammond filed his claims on March 15, 2007, alleging disability beginning on January 1, 2001. (Tr. 136-39). His claims were denied initially on July 6, 2007, and on reconsideration on February 26, 2008. (Tr. 61-68, 71-74). A hearing was held on May 27, 2009 before an Administrative Law Judge ("ALJ"). (Tr. 7-42). Following the hearing, on September 2, 2009, the ALJ determined that Mr. Hammond was not disabled during the relevant time frame. (Tr. 50-60). The Appeals Council denied Mr. Hammond's request for review (Tr. 1-3), and Mr. Hammond appealed to this Court. *See James D. Hammond v. Comm'r, Social Security*, Civil No. PWG-10-2547 (D. Md. Mar. 13, 2011). On May 2, 2011, the Commissioner consented to a remand of the case to the agency. (Tr. 411). The Appeals Council subsequently issued an order vacating the ALJ's previous decision and directing the ALJ to consider certain medical opinion evidence. (Tr. 412-15). A second hearing was held on May 2, 2012, *see* (Tr. 373-408) and the ALJ determined once again, in a written opinion, that Mr. Hammond was not disabled during the relevant time frame. (Tr. 353-67). The Appeals Council declined to assume jurisdiction, (Tr. 345-47), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Hammond suffered from the severe impairments of epilepsy and depression. (Tr. 358). Despite these impairments, the ALJ determined that Mr. Hammond retained the residual functional capacity ("RFC") to:

perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to routine, repetitive simple tasks within a basic routine in positions where there is little to no change in the

>     work setting from day-to-day. Due to seizures, he is also precluded from climbing ladders, ropes, and scaffolds, and is precluded from exposure to all hazards.

(Tr. 363). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Hammond could perform jobs existing in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 365-66). Mr. Hammond presents three arguments on appeal: (1) the ALJ failed to find that he met the criteria in Listing 12.05C; (2) the RFC assessment is erroneous; and (3) the ALJ improperly rejected testimony by the VE that supported a finding of disability. Each argument is addressed in turn.

First, Mr. Hammond contends that his impairments meet the criteria in Listing 12.05C. Listing 12.05 governs intellectual disability, which refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Listing 12.05 is met when the claimant shows "deficits in adaptive functioning" in addition to the requirements of sub-sections A, B, C, or D. *Id.* At issue here is sub-section C, which requires a showing of two distinct prongs. First, the claimant must demonstrate "[a] valid verbal, performance, or full scale IQ of 60 through 70." *Id.* Second, the claimant must have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* Mr. Hammond points to his IQ score of 70, his seizure disorder, and his affective disorder to argue that he satisfies all the criteria of Listing 12.05C.

The ALJ does not dispute that Mr. Hammond meets the first and second prongs of 12.05C, as he has a valid verbal IQ score of 70, s*ee* (Tr. 242-46), and suffers from the severe impairments of epilepsy and depression. However, the ALJ concluded that Mr. Hammond failed to make the threshold showing required by Listing 12.05, that he "has been mentally retarded since the developmental period." (Tr. 362). Specifically, the ALJ noted that Mr. Hammond performed semi-skilled work in the past, graduated the 12th grade from a special education program, in which he was placed for behavior problems, and scored a verbal IQ of 70, which demonstrated not mental retardation, but "borderline intellectual functioning." *Id.* I agree.

The diagnostic criteria in Listing 12.05 require a claimant to demonstrate "significantly subaverage intellectual functioning with deficits in adaptive functioning...." which must manifest before age 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012). Mr. Hammond's medical record contains evidence which demonstrates limited deficits in adaptive functioning after age 22, but not before. Mr. Hammond's mother stated in a May, 2007 Third-Party Adult Function Report that Mr. Hammond requires supervision when shaving, and preparing meals, and that Mr. Hammond cannot drive. (Tr. 162-70). However, in that same report, Mr. Hammond's mother noted that he goes to church and community centers on a regular basis and "gets along very well with authority." (Tr. 166-67). As the ALJ correctly pointed out,

Mr. Hammond also performed semi-skilled jobs in the past as forklift operator and a cook. (Tr. 380-82). Mr. Hammond likewise cleaned homes and installed sheetrock for approximately two years. *Id.* Mr. Hammond devotes significant argument to his verbal IQ score of 70. Pl.'s Mot. 17-18. However, a low IQ alone does not establish deficits in adaptive functioning prior to age 22. *See Justice v. Barnhart*, 431 F. Supp. 2d 617, 620 (W.D. Va. 2006) ("[T]he Fourth Circuit has not held that low IQ alone proves manifestation of deficits in adaptive functioning before age 22."). Taken together, the ALJ concluded that the record did not establish that Mr. Hammond suffered from deficits in adaptive functioning prior to age 22, as required by Listing 12.05. The function of this Court is not to weigh conflicting evidence, determine credibility, or substitute its judgment for that of the Commissioner's. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's finding that Mr. Hammond did not meet Listing 12.05C rested on substantial evidence, and will not be disturbed.

Mr. Hammond also argues that he meets the requirements of Listing 12.05D "due to his marked difficulties in activities of daily living, maintaining social functioning, and concentration, persistence, or pace." Pl.'s Mot. 19. However, no physician ever assessed Mr. Hammond's mental impairments in the functional areas at the "marked" degree of limitation, which is required by the Listing. *See* (Tr. 251-64; 265-68; 299-312; 313-16). Therefore, Mr. Hammond cannot satisfy Listing 12.05D.

Mr. Hammond raises several arguments contesting the ALJ's RFC assessment. First, Mr. Hammond argues that the ALJ improperly rejected medical opinion evidence. Pl.'s Mot. 20-21. Specifically, Mr. Hammond points to the opinion of Dr. Amble, his treating physician, who indicated in a Physical RFC Questionnaire that Mr. Hammond was "incapable of even 'low stress' jobs" and was "unable to work." (Tr. 342). While the ALJ must generally give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig,* 76 F.3d at 590. The ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(e); SSR 96–5p. Pursuant to Social Security regulations, the ALJ is required to "give good reasons" for the weight assigned to a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

In this case, the ALJ discussed in detail his reasons for according Dr. Amble's opinion "little weight." (Tr. 364). The ALJ noted that Dr. Amble's own treatment records did not support a conclusion that Mr. Hammond was disabled. (Tr. 364). Several different doctors at Dr. Amble's office treated Mr. Hammond and most of the physical examinations evidence normal findings. *See* (Tr. 479-87). Mr. Hammond also inconsistently complained of pain and the frequency of his seizures, and often missed doctor's appointments and smelled of alcohol. *See* (Tr. 479) (noting no complaints of pain); (Tr. 482) (noting that Mr. Hammond had not been present for an appointment for nine months); (Tr. 485) (noting an alcoholic odor). At many appointments Mr. Hammond did attend, he reported "no complaints." *See* (Tr. 514, 537). I find that the ALJ's assignment of weight is therefore supported by substantial evidence in the record, and remand on this basis is inappropriate.

Mr. Hammond also argues that the ALJ ignored the findings of a neurologist and two consultative examiners in favor of findings rendered by state agency record reviewers. Pl.'s Mot. 20-21. Mr. Hammond is correct that the ALJ failed to discuss the progress notes of Dr. Dewberry, a neurologist. However, an ALJ is not required to address every piece of evidence in the record, so long as a reviewing court can determine from the opinion "what the ALJ did and why he did it." *Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 762 n.10 (4th Cir. 1999) (citing *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs,* 137 F.3d 799, 803 (4th Cir. 1998)); *see also Melgarejo v. Astrue,* No. JKS-08-3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009) (all holding that an ALJ's duty to explain his findings and conclusions on all material issues of fact or law is satisfied when a reviewing court can determine, from an ALJ's opinion and the evidence of record, how he reached his conclusion). Dr. Dewberry's impressions included seizure disorder, peripheral neuropathy, and numbness of the hands. (Tr. 320-22). The ALJ properly accounted for Mr. Hammond's seizure disorder in the RFC assessment. The medical record does not support, nor does Mr. Hammond contend, that peripheral neuropathy and numbness of the extremities were severe impairments. Therefore, the ALJ's failure to discuss Dr. Dewberry's findings does not warrant remand.

The ALJ also considered the evaluations of Dr. McDonald and Dr. Hirsch, two consultative examiners who assessed Mr. Hammond's mental abilities. *See* (Tr. 364-65). While Dr. McDonald noted that some psychological subtests, such as those measuring fine motor skills and verbal skills, demonstrated functioning at the "mildly retarded" level, Mr. Hammond's "general level of intellectual functioning [was] considered to be limited, but not mentally deficient…" (Tr. 244). Similarly, Dr. Hirsch did not assert that Mr. Hammond's mental abilities precluded work. Dr. Hirsch concluded that Mr. Hammond was "able to understand simple instructions and many that have some more complexity to them than that." (Tr. 296-97). These conclusions comport with those reached by Dr. Dale and Dr. Wessel in the Psychiatric Review Techniques and Mental RFC Assessments. Neither Dr. Dale nor Dr. Wessel found any "marked" limitations in the functional areas. *See* (Tr. 251-64; 265-68; 299-312; 313-16). Moreover, both Dr. Dale and Dr. Wessel cited the consultative examiners' reports in their notes. *See* (Tr. 263, 311, 315). I find, therefore, that the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence.

Mr. Hammond also suggests that the ALJ's failure to discuss his GAF score is significant. Dr. Hirsch assigned Mr. Hammond a GAF score of 50. *See* (Tr. 297). However, GAF scores, even when reliable and from acceptable medical sources, do not govern an ALJ's analysis. "[A] GAF score is not determinative of whether a person is disabled. Rather, the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings." *Melgarejo*, 2009 WL 5030706, at *2 (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50746–01, 50764–65 (Aug. 21, 2000)). Therefore, the ALJ's failure to evaluate the assigned GAF score does not warrant remand.

Mr. Hammond next contends that the ALJ erroneously made an adverse credibility determination. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects [his] ability to work." *Id.* at 595. The ALJ followed that process in this case. He determined that Mr. Hammond's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 363). However, he did not find Mr. Hammond's testimony concerning the intensity, persistence, and limiting effects of his symptoms to be fully credible. (Tr. 363-64). The ALJ noted that while Mr. Hammond testified that he suffered seizures six or seven times per month, he could not recall a seizure before April, 2012. (Tr. 364, 391-93). Additionally, the ALJ noted that Mr. Hammond testified that he had not had a drink in more than a year, *see* (Tr. 390), but treatment records contain evidence of continued drinking. (Tr. 482, 485). In light of the evidence cited by the ALJ, I find that substantial evidence supported his adverse credibility finding. Remand is therefore unwarranted.

Mr. Hammond's final RFC-related argument is that the ALJ failed to accommodate his affective disorder, dysthymia, or depression in the RFC assessment. Pl.'s Mot. 22. The ALJ noted in his narrative accompanying the RFC assessment that, the psychiatric review techniques of record demonstrated that Mr. Hammond was moderately limited in his ability to "complete a normal workday/workweek" and that he was "capable of showing socially appropriate behavior." (Tr. 365). Thus, the ALJ limited Mr. Hammond to "routine, repetitive, unskilled tasks." (Tr. 365). I find that this limitation accounts for Mr. Hammond's mental impairments. Furthermore, Mr. Hammond fails to explain how additional restrictions in the RFC assessment would accommodate his mental impairments. Accordingly, this argument is without merit.

Finally, Mr. Hammond argues that the ALJ ignored testimony by the VE that concluded Mr. Hammond was incapable of performing jobs that exist in significant numbers in the national economy. Pl.'s Mot. 23. The portions of the VE's testimony, which arguably supported a finding of disability, were in response to questioning by Mr. Hammond's attorney. The hypotheticals posed by Mr. Hammond's attorney included significant non-exertional limitations. *See* (Tr. 398-403). The ALJ, however, is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir. 1986)). The hypotheticals that the ALJ posed were based on the RFC assessment, which limited Mr. Hammond to work in which he could never climb ladders, ropes or scaffolds, and in which he should avoid all exposure to hazards. (Tr. 396). The hypothetical also limited Mr. Hammond to "routine, repetitive simple tasks within a basic routine and jobs where there would be little to no change in the work setting from day to day." *Id.* In finding that the RFC assessment was based on substantial evidence, I find that the ALJ properly relied on the VE testimony.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 13) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 15) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge